UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL ANN ALONSO,

   Plaintiff,

v.          Case No. 1:10-cv-634
           Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on August 3, 1976 (AR 187).[1]  She completed high school and had special job training in computer applications (AR 198).  Plaintiff alleged a disability onset date of October 2, 2006 (AR 187).  She had previous employment as an assistant manager of a retail store, a coder at litigation services, a customer service representative, a machine operator, a secretary, a temporary worker and a waitress (AR 193).  Plaintiff  identified her disabling conditions as a brain tumor, chronic headaches, depression, and anxiety and panic attacks (AR 192).  On June 24, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim de novo and entered a decision denying benefits (AR 38-46).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

3

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 2, 2006 and met the insured status requirements of the Social Security Act through September 30, 2010 (AR 40). The ALJ noted that while plaintiff worked as a temporary employee at the Kent County Treasurer's Office and at Amway in 2007, her work activity did not rise to the level of substantial gainful employment (AR 40). At step two, the ALJ found that plaintiff suffered from severe impairments of depression and a panic disorder (AR 40). The ALJ further found that plaintiff's benign brain tumor and headaches did not constitute severe physical impairments under the regulations (AR 40). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically addressing plaintiff's claims under Listing 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 11.05 (benign brain tumors) (AR 41).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels, but she must avoid concentrated exposure to operational control of moving machinery and unprotected heights in work limited to performing simple, routine, and repetitive tasks" (AR 42). The ALJ further found that plaintiff could not perform any of her past relevant work (AR 45).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs at various exertional levels in the national economy (AR 45-46). Specifically, plaintiff could

perform approximately 90,000 jobs in the regional economy (defined as the State of Michigan) such as: manufacturing (assembly, sorting, grading) (40,000 jobs); and clerical (50,000 jobs) (AR 45-46). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 2, 2006 through the date of the decision (June 24, 2009) (AR 46).

## III.  ANALYSIS

Plaintiff raised four issues (with sub-issues) on appeal.

**A.      Whether the Commissioner erred as a matter of law in improperly evaluating the opinions of plaintiff's treating physicians.**

Plaintiff contends that the ALJ did not properly evaluate the opinions of several treating physicians.  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."  *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  In summary, the opinions of a treating physician "are only accorded great weight when they are

supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 1.    Dr. Jeffery Williamson and PA-C Tom Cox[2]

Plaintiff contends that the ALJ failed to mention her treating physician Dr. Williams and disregarded the opinion of a PA-C Cox, a physician's assistant in the doctor's practice at White Pine Family Medicine.  Plaintiff points out that her chronic fatigue syndrome and migraine headaches are "well documented" with her treating physicians at White Pine Family Medicine (AR 529, 566-67, 570-72).  These records indicate that plaintiff began as a new patient in October 2, 2006 (her alleged disability onset date), with a reported history of a hospitalization for panic, anxiety and headaches, and a history of anxiety, depression, panic attacks and migraine headaches (AR 529).

In February 2008,  PA-C Cox prepared a medical needs form for the Michigan Department of Human Services, in which he diagnosed plaintiff with fibromyalgia and other (unintelligible) ailments (AR 504).  Then, in April 2008, PA-C Cox stated in an affidavit that he had diagnosed plaintiff with depression, anxiety with panic disorder, fibromyalgia, chronic fatigue and migraine headaches (AR 554-57).  PA-C Cox opined that the combined effects of these impairments affect plaintiff's ability to work because: she suffers from chronic fatigue due to lack of restorative sleep, which is itself due to her emotional status and pain; the symptoms related to the chronic fatigue produce severe limitations as to pace, concentration, and the ability to focus on task as well as her ability to maintain minimal exertion in an 8-hour workday; that these limitations make her

---

[2] Plaintiff sometimes refers to PA-C Cox as "Mike Cox."  *See* Plaintiff's Brief at p. 13.

6

best suited for part-time employment; that the diagnosis of fibromyalgia was based upon blood work and the testing for trigger points; and, that although plaintiff's chronic fatigue and migraine headaches are primarily subjective conditions, the diagnoses are also based upon clinical observation and assessment (AR 554-57).  As a result of these impairments, PA-C Cox anticipated the following limitations: plaintiff's workday would require frequent breaks from work, such as 10 minutes every hour; due to her depression, plaintiff would have problems maintaining attendance and punctuality within a customary degree of tolerance; and plaintiff would likely miss more than three days of work per month and be tardy more than three days per month (AR 556).  In addition, due to her pain, plaintiff could not maintain any one position for any length of time and would require a sit-stand option (AR 556).

In November 2008, plaintiff saw PA-C Cox for joint pain (AR 572).  In January 2009, plaintiff sought treatment for anemia, and was diagnosed with chronic fatigue syndrome, fibromyalgia, chronic pain syndrome, weight gain and depression with anxiety (AR 570-71).  In April 2009, plaintiff reported a fibromyalgia flare up, which was accompanied by depression with anxiety, weight gain and chronic fatigue syndrome (AR 566-67).

On May 26, 2009 (two weeks after plaintiff's administrative hearing), Dr. Williams signed an unsworn statement which was placed in the administrative record.  In this statement, Dr. Williams explained: that a physician's assistant is a health professional in the subfield of the practice of medicine and osteopathic medicine; that "[t]he practicing of medicine means the diagnosis, treatment, prevention, cure, or relieving of human disease, ailment, defect, complaint or other physical or mental condition by attendance, advice, device, diagnostic tests, or other means of

offering, undertaking or attempting to do, or holding oneself as able to do any of these acts;" and that

> PA-C Cox is supervised by any and all family physicians at White Pine Family Medicine. If there were any areas of disagreement with his diagnosis, treatment, assessment, judgment or opinion in the care of a patient, such disagreement would be entered in the patient's record. The fact that there is no entry in the record indicating disagreement with the care provided by PA-C Cox, implies that there is concurrence with all aspects of his care and judgment.

(AR 587-88).

The ALJ considered the statements of PA-C Cox and assigned them extremely limited weight as statements from an "other source" rather than an acceptable medical source (AR 44). With respect to the April 2008 statement, the ALJ observed that "given the dominant nature of claimant's mental impairments, a mental health professional would be in a better position to address claimant's condition rather than a family practice physicians' assistant" (AR 44).

The ALJ could properly discount PA-C Cox's opinions because he is not an acceptable medical source under 20 C.F.R. §§ 404.1513 and 416.913. While PA-C Cox's opinion can be considered as evidence from an "other" medical source, it is not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (evidence from "other" non-medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). *See also, Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, No. 00-1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

8

In SSR 06-3p, the Commissioner acknowledged that with the growth of managed health care in recent years, nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists.[3] For this reason, opinions from other medical sources, such as nurse practitioners and physician's assistants "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p.

Consistent with SSR 06-3p, the ALJ evaluated and then properly discounted PA-C Cox's opinion. While plaintiff relies on Dr. Williams' unsworn statement as validating PA-C Cox's opinion, Dr. Williams did not offer an opinion regarding plaintiff's medical or mental condition. Rather, the doctor merely stated that the lack of an "entry in the record indicating disagreement" with PA-C Cox's opinions implied concurrence with Cox's care and judgment. Accordingly, plaintiff's claim of error should be denied.

### 2.    Herman Sullivan, M.D.

The ALJ found that plaintiff suffered from severe impairments of depression and a panic disorder (AR 40). Plaintiff contends that the ALJ erred by failing to find her headaches to be a severe impairment. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.*

Plaintiff points out a letter from neurologist Dr. Herman Sullivan stating that plaintiff reported chronic and intractable headaches. Plaintiff's Brief at pp. 19-20. However, the court notes that within this letter, Dr. Sullivan went on to state that he found "no neurological deficits" and that a lesion in plaintiff's left temporal lobe "has no bearing on her current presentation of chronic daily headaches" (AR 409-10). Although the ALJ did not find plaintiff's headaches to be a "severe impairment" under §§ 404.1521 and 416.921 (AR 40-41), he considered all of plaintiff's impairments and symptoms, including the headaches, in the remaining steps of the sequential evaluation (AR 41-44). Accordingly, the ALJ's failure to find chronic headache as a separate severe impairment is not error requiring reversal. *See Maziarz*, 837 F.2d at 244.

### 3.      Nan Alt, M.D.

Dr. Nan Alt, a board certified psychiatrist, treated plaintiff from September 2007 through February 2008 (AR 491-502). Plaintiff contends that the ALJ did not give appropriate weight to Dr. Alt's "mental RFC" or Global Assessment of Functioning (GAF) scores.

### a.      Dr. Alt's evaluation

Dr. Alt diagnosed plaintiff with major depressive disorder, generalized anxiety disorder and borderline personality disorder, and also noted chronic pain (AR 493-94, 496-98). On February 23, 2008, Dr. Alt completed a document entitled "medical provider's assessment of ability to do mental work-related activities" (AR 500-02). In this document, Dr. ALt indicated that in the area of "making personal/social adjustments," plaintiff had three "marked limitations" (i.e., in her

10

ability to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability), with no limitation in her ability to maintain personal appearance (AR 501). With respect to "functional limitations," plaintiff: had "mild limitations" in performing activities of daily living, in maintaining concentration, persistence or pace; "one or two" episodes of decompensation, each of extended duration; and "marked limitations" in maintaining social functioning (AR 501). Dr. Alt did not prepare a narrative interpreting plaintiff's limitations to any particular work restrictions. Rather, the doctor stated:

> Please note that Rachel continues to present w/complaints that she experiences anxiety and panic attacks. She does seem to struggle with being able to manage her life successfully. Rachel can be very over reactive to issues of frustration which will negatively impact her ability to maintain employment. Medication adjustments continue to take place in order to give Rachel relief from her symptoms.

(AR 502).

The ALJ gave limited weight to the functional limitations identified by Dr. Alt, stating in pertinent part:

> I do not find that the objective record of medical treatment supports such limitations and, thus, assign the statement limited weight. After reviewing the treatment notes of Dr. Alt and the record as a whole, I am not persuaded by the degree of limitations proposed.

(AR 44).

The court agrees with plaintiff that the ALJ failed to properly evaluate Dr. Alt's opinions. Dr. Alt treated plaintiff for five months in 2007 and 2008, diagnosed plaintiff with a major depressive disorder, generalized anxiety disorder and borderline personality disorder, and managed plaintiff's medication for those conditions (AR 492-98). As written, the ALJ's decision effectively eliminated the opinions of all treating sources with respect to plaintiff's mental condition (which the

ALJ considered the driving force in her disability claim) by not accepting the PA-C's opinion regarding plaintiff's mental condition and then summarily rejecting plaintiff's treating psychiatrist's opinion as not supported by the objective record.  The ALJ has failed to give good reasons for not crediting Dr. Alt's opinions regarding the extent of plaintiff's mental impairments.  *See Wilson*, 378 F.3d at 545.  Accordingly, this matter should be remanded pursuant to sentence four of 42 U.S.C. sec 405(g) to re-evaluate the opinions expressed by Dr. Alt.

       **b.**      **GAF scores**

       Plaintiff also points out that Dr. Alt assigned her a GAF score of 50 (AR 490-98). Plaintiff's GAF score of 50 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.[4]  Plaintiff's reliance on the GAF score is misdirected.

       The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score.  *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).  The Sixth Circuit has recognized that a GAF score "may have little or no bearing on the subject's social and

---

      [4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  *DSM-IV-TR* at pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  *Id.*

occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006). "[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.*, citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002). *See* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings"). Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (citation omitted). Accordingly, plaintiff's claim of error with respect to the GAF scores should be denied.

> **B.    Whether the ALJ erred in failing to consider plaintiff's fibromyalgia and headaches as severe impairments, whether the ALJ erred in finding plaintiff not credible, and whether the ALJ failed to properly evaluate plaintiff's allegations of pain.**

> **1.    Fibromyalgia and headaches as severe impairments**

The court previously addressed plaintiff's claim that the ALJ failed to find her headaches to be a severe impairment. *See* discussion in § III.A.2., *supra*. Similarly, the ALJ did not find plaintiff's fibromyalgia to be a severe impairment, noting that the trigger points commonly associated with that condition are not documented and that plaintiff was not referred to a physician or specialist to treat the condition (AR 41). As with plaintiff's headaches, while the ALJ found that the fibromyalgia was not a "severe impairment" under §§ 404.1521 and 416.921 (AR 40-41), he considered all of plaintiff's impairments and symptoms, including the fibromyalgia, in the remaining

steps of the sequential evaluation (AR 41-44).  Accordingly, the ALJ's failure to find fibromyalgia

as a separate severe impairment is not error requiring reversal.  *See Maziarz*, 837 F.2d at 244.

### 2.    Plaintiff's credibility

Plaintiff contends that the ALJ failed to adequately address her credibility.  An ALJ

may discount a claimant's credibility where the ALJ  "finds contradictions among the medical

records, claimant's testimony, and other evidence."    *Walters*, 127 F.3d at 531.  "It [i]s for the

[Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses

and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*,

471 F.2d 1265, 1267 (6th Cir. 1972).  The court "may not disturb" an ALJ's credibility

determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent

years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings

are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212

at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination

made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161,

2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007).  Nevertheless, an ALJ's credibility determinations

regarding subjective complaints must be reasonable and supported by substantial evidence.  *Rogers

v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

At the administrative hearing, plaintiff testified that after her last job, she took classes

at a community college (GRCC) (AR 61).  When asked about her matriculation dates, plaintiff stated

"I don't remember dates" (AR 61).  When pressed by the ALJ, plaintiff testified that in 2005 she

took a four month computer class at GRCC Tech which resulted in a certificate, and that she took

Spanish classes in 2006 (AR 62).  Despite taking these classes, plaintiff testified that she could not read and comprehend at the same time (AR 62).  Plaintiff also testified: that she could not focus on jobs; that she could not get out of bed sometimes; that she had headaches and migraines; that she did not want to leave home; that she did not like answering her door; that she did not like answering her phone; that she had panic attacks; that she does not go to the children's events; and, that her husband and children do most of the housework  (AR 66-71).  Plaintiff further testified: that she can dress and shower herself; that she drives (even though her license was suspended for failing to pay tickets); that she has a lot of responsibilities with the children; that the children have few activities and stay home under the care of either plaintiff or her husband; and that she sometimes cooks, shops and does the laundry (AR 67-71).

Upon questioning by her attorney, plaintiff testified: that she had a distressed and unhappy childhood; that she takes a number of medications which make her drowsy; that she does not feel like getting out of bed two or three times a week; that she had a panic attack or nervous breakdown at her last job; that she cries about two times a week; that she has pain in her shoulders, elbows, wrists, fingers, hips, knees and ankles; that she does not have any "good days;" that she has to lie down "90 % of the time" due to pain; that she has to lie down about three times a week due to pain; that she cannot carry pans or wash dishes due to pain in her fingers and hands; that she has memory problems; that she gets irritable; that her pain and depression have lowered her "productivity" at least 50%; that she cannot sleep without medication; that she takes naps twice daily, but is not refreshed; that she suffers from panic attacks about twice a month; that she could not complete all of the activities of daily living without help from her husband and children; and, that she does not have a social life  (AR 75-81).

15

Finally, plaintiff testified that she cannot perform her past jobs for the following reasons: she is always tired; she probably would not make it work every day on time; she does not like being approached by people; she does not like approaching people; and her headaches are terrible (AR 81).

The ALJ addressed plaintiff's credibility as follows:

After careful consideration of the evidence, I find claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence , and limiting effects of these symptoms are not credible to the extent they are inconsistent with her residual functional capacity assessment.

I do [sic] find claimant's testimony at all credible. Her central contention appears to be that she cannot tolerate the pressures and stresses of both her home environment and the responsibilities of work. But the evaluation of disability under the Social Security Act and Regulations considers only the effects that are reasonably attributable to one's physical and mental impairments. Even with reported assistance from others, claimant appears to perform many routine daily tasks for her household which is remarkable for its composition of seven minor children. This is incompatible with claimant's testimony that she does nothing and is unable to do anything.

(AR 44).  The ALJ also observed that plaintiff's daily activities include the care of seven children ranging from five to 16 years of age and that plaintiff attended classes at a community college during a portion of the time in which disability is alleged (AR 41).

The record reflects that plaintiff gave inconsistent and at times contradictory testimony regarding the extent of her limitations and the extent of her daily activities.  Ultimately, the ALJ concluded that plaintiff's ability to attend classes at a community college and care for the seven children in the household was inconsistent with plaintiff's testimony "that she does nothing and is unable to do anything" (AR 44).  While plaintiff may disagree with the ALJ's summary of

her inconsistent testimony, the ALJ's credibility determination is supported by substantial evidence in the record.  Accordingly, plaintiff's claim of error should be denied.

### C.    Whether the Commissioner erred as a matter of law in assessing lay testimony.

Plaintiff contends that the ALJ "completely ignored" the testimony of her husband. Plaintiff's Brief at p. 26.  As an initial matter, plaintiff's husband did not testify at the administrative hearing (AR 53-90).  The record reflects that plaintiff's husband gave a sworn statement to her attorney on May 4, 2009 (AR 272-82).  Plaintiff's Brief at pp. 11, 26-28.  In this statement, plaintiff's husband stated, among other things: that plaintiff has one to three migraine headaches per week; that when plaintiff has a migraine she lays down all day in bed and is "totally incapacitated;" that the headaches usually last the entire day; that she started having panic attacks after their son passed away in 2004; that she does not sleep well; that she takes naps during the day; that she needs help with activities of daily living because "she can't do basically anything around the house;" that she has two or three "bad days" each week when she cannot get out of bed; that she cannot open a can with a can opener or turn a screwdriver because it hurts her hands; and she "complains about everything," (i.e., pain in her fingers, wrists, elbows, shoulders, knees and feet) (AR 274-81).

The Commissioner must provide a statement of evidence and reasons on which the decision is based.  *See* 42 U.S.C. § 405(b)(1).  However, it is unnecessary for the ALJ to address every piece of evidence.  *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the

17

evidence in the record); *Patrick v. Astrue*, No. 07-161-JBC,  2008 WL 3914921at *2 (E.D. Ky. Aug.

19, 2008) ("even though an ALJ must consider the lay testimony, he is not required to spell out in

his decision what weight he gave to the testimony") (citing *Higgs v. Bowen*, 880 F.2d 860, 864 (6th

Cir.1988) (rejecting claimant's argument that the administrative agency had to spell out in its

opinion the weight attached to claimant's husband's testimony, where the agency reviewed the

"entire record which was before the administrative law judge").   Here, the ALJ stated that he

performed a careful review of all the evidence.   The ALJ's failure to explicitly refer to plaintiff's

husband's testimony is not an error requiring reversal.   Accordingly, plaintiff's claim regarding the

ALJ's failure to address her husband's statement should be denied.

> **D.     Whether the ALJ's finding that plaintiff is limited
> to "simple, routine, repetitive tasks" constitutes a
> sufficiently specific description of her ability to
> perform work-related mental activities.**

At step five of the sequential evaluation, the ALJ found that plaintiff could perform

approximately 40,000 manufacturing jobs and 50,000 clerical jobs in the regional economy (AR 45-

46). The ALJ's finding was based upon a hypothetical question posed to a vocational expert (VE)

which, among other restrictions, limited the hypothetical person "to simple, routine, and repetitive

tasks" (AR 85).   Plaintiff contends that this limitation does not constitute a sufficiently specific

description of her ability to perform work-related mental activities and that the hypothetical question

"failed to fully advise the VE of what Ms. Alonso could and could not do - physically and

emotionally."  Plaintiff's Brief at p. 29.  Plaintiff contends that the ALJ should have addressed the

specific "limitations" set forth in Dr. Alt's opinion (AR 87).   In this regard, the VE testified that

certain limitations in Dr. Alt's opinion would eliminate the 90,000 positions, i.e., "the marked

limitation in dealing with work stresses, behave in an emotionally stable manner, relate predictably

in social situations, and demonstrate reliability," as well as the doctor's opinion that plaintiff "can be very over reactive to issues of frustration." (AR 87).  The VE further testified that if the additional limitations identified by Dr. Alt applied (i.e., plaintiff needed to remain in bed more than one day per week, was unable to stay on task for any extended period of time, and needed to take breaks for pain and headaches of 30 minutes per day), then such limitations would be work preclusive, resulting in frequent absenteeism, frequent tardyism [sic] and lack of competitive productivity (AR 88).  The VE explained:

> Well, it -- there's a variety of factors of availability that come into play. Quality of work, quantity of work, relationship with co-workers, relationship with supervisors, any other absenteeisms [sic] or tardyisms [sic] given, you know, the current economic climate, there's less tolerance by employers.  And it's my experience that you can miss one or two times a month and still maintain your employment situation.

(AR 89).  Finally, plaintiff's counsel elicited testimony from the VE that if the hypothetical individual needed to take unscheduled breaks of 10 minutes every hour, that additional restriction would eliminate competitive employment (AR 89).

The hypothetical question limiting plaintiff "to simple, routine, and repetitive tasks" accurately reflected her limitations.  "Simple, routine and repetitive" is in essence shorthand for the types of duties involved in unskilled work, which is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a). In this regard, unskilled work has been defined as work which involves simple and routine tasks.

> We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work. Indeed, the Social Security Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and gives the examples of "handling, feeding and offbearing" - in other words, simple, repetitive tasks. 20 C.F.R. § 404.1568(a).

*Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See, e.g., Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (Sixth Circuit determined that a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner).

Plaintiff relies on the recent decision in *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) to support her claim that the ALJ's hypothetical question was deficient. In *Ealy*, the Sixth Circuit rejected an ALJ's "streamlined hypothetical" which limited the claimant "to simple, repetitive tasks and instructions in non-public settings," where the ALJ found that the claimant's RFC limited the claimant's "ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical." Given the rather specific RFC assessment, the *Ealy* court rejected that ALJ's hypothetical question because it omitted "speed - and pace - based restrictions." *Id.* However, the present case is distinguishable from *Ealy*. Unlike *Ealy*, the ALJ did not find that plaintiff was subject to a specific speed and pace restriction (such as working two hour segments over an eight-hour day where speed

was not critical).  Rather, the ALJ found that plaintiff had only mild limitations with regard to concentration, persistence or pace (AR 42).  Such limitations could be accommodated by performing simple, routine and repetitive tasks (i.e., unskilled work).  *See, e.g.*, *Smith*, 307 F.3d at 378-79; *Allison*, 2000 WL 1276950 at *4.  Accordingly, plaintiff's claim of error should be denied.

## IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should articulate good reasons not to give Dr. Nan Alt's opinions of plaintiff's mental impairments controlling weight.  If the Commissioner subsequently determines to give Dr. Alt's opinions controlling weight, and if those opinions include additional functional limitations, then the Commissioner should determine whether such additional limitations erode the occupational base of 90,000 jobs identified in the ALJ's June 24, 2009 decision.

Dated:  August 8, 2011                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).